UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| TERENCE TAYLOR, ) | |
|     Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 16-1336 |
| ) | |
| WEXFORD HEALTH ) | |
| SOURCES, INC., et. al, ) | |
|     Defendants. ) | |

CASE MANAGEMENT ORDER

This cause is before the Court for consideration of the Plaintiff and Defendants' additional briefing regarding claims against Defendants' Pontiac Correctional Center Warden Guy Pierce and Stateville Correctional Center Assistant Warden Doretta O'Brien. [182, 183].

I. BACKGROUND

Plaintiff, a state prisoner, originally alleged various Defendants at both Stateville and Pontiac violated his constitutional rights including Wexford Health Sources, Dr. Saleh Obasi,[1] Physician's Assistant LaTanya Williams, Nurse Cynthia Garcia, and Nurse Megan Foley; Correctional Medical Technicians (CMT) Naveen Nagpal, Kristi Eschleman, and Rebecca Buckowski; Wardens Guy Pierce and Michael Lemke; Assistant Warden or Administrators Tarry Williams, Michael Magana, Royce Brown-Reed, Victor Calloway, Mary Ellen Grennan, Kimberly Kelley, and Doretta O'Brien; and

---

[1] Dr. Obasi is now deceased and the Administrator of his estate was substituted as a Defendant.

Correctional Officers Jenny McGarvey, Tralon Durrett, Randy Malkowski, and Dominic Griffin.

Plaintiff alleged the Defendants were deliberately indifferent to his serious medical condition, failed to intervene to provide medical care, failed to protect from an inmate attack, failed to intervene to prevent injury from correctional officers, and intentionally inflicted emotional distress. Plaintiff further asked for indemnification regarding all Illinois Department of Corrections (IDOC) Defendants.[2] (Sec. Amended Comp., [94]).

Plaintiff alleged he was assaulted by another inmate on June 25, 2013 at Stateville Correctional Center. Plaintiff explained the incident occurred when he was handcuffed and taken to a shower room. Officers were using the area as a holding cell for inmates scheduled to appear before the Adjustment Committee. Other inmates in the shower room were also handcuffed except for Inmate Andrew McKissick who had one hand free. As soon as Plaintiff entered the room, Inmate McKissick began punching him and the two fell onto the floor outside the holding room.

Plaintiff alleged he was in out of consciousness, but he saw officers running toward them. When he came to, officers had a knee in his back and were restraining him. Apparently, this is the basis of his second failure to intervene claim as Plaintiff

---

[2] The Court notes Plaintiff originally filed this case in the Northern District of Illinois on June 11, 2015, but his case was ultimately transferred to the Central District. *See Taylor v. Magarvie*, Case No. 15-5190. Before transferring the case, Judge Sara Ellis dismissed Plaintiff's *respondeat superior* and indemnification claims against Wexford. *See Taylor v. Magarvie*, Case No. 15-5190, [92, 106]; July 26, 2016 Minute Entry.

2

alleges he "was hurt further when correctional officers came in to end the assault." (Plain. Resp., [164], p. 1).

Plaintiff then claims Defendants were deliberately indifferent to his back and leg pain, first at Stateville, then at Pontiac. Plaintiff claims he repeatedly complained of pain, but only received over- the-counter pain medications and an analgesic balm. Plaintiff claims x-rays later revealed he had broken his leg. (Sec. Amended Comp., [94]).

The Court recently granted summary judgment on several counts and Plaintiff's current claims before the Court include: "(a) denial of medical care against Defendant Nagpal; (b) failure to protect against Defendants McGarvey, Durrett, Malkowski, and Griffin; (c) failure to intervene against Defendants McGarvey, Durrett, Malkowski, and Griffin; and (d) intentional infliction of emotional distress against Defendants McGarvey, Durrett, Malkowski, and Nagpal. Plaintiff also seeks to enforce the State's obligation to indemnify IDOC Defendants or pay any judgments against them." March 26, 2019 Summary Judgment Order, p. 33.

The Court further reserved ruling on Plaintiff's claims against Defendant O'Brien in her individual capacity and Defendant Pierce in his official capacity. While the Court granted summary judgment for the individual capacity claims against all other Wardens and Assistant Wardens, the parties did not specifically address the claim against Defendant Assistant Warden O'Brien. In addition, the parties did not address the specific official capacity claim against Defendant Pierce in their briefing. Therefore, the Plaintiff and IDOC Defendants were given additional time to address each claim and the parties have now complied. [182, 183].

The Court notes during a May 3, 2019 telephone hearing, the Court stated it would be willing to further consider the dismissed allegations, but the parties chose to limit their briefing to the two claims cited. Nonetheless, the Court will provide greater explanation of the previous rulings in order to clarify the record and the issues remaining for trial.[3]

## II. DISMISSED AND SURVIVING MEDICAL CLAIMC

The Court found the Plaintiff was unable to present concrete evidence in support of his dismissed claims. In responding to a summary judgment motion, "a party may not rest on its pleadings," but instead must demonstrate with admissible, "competent evidence" that there is a genuine issue for trial. *Rutledge v. City of Chicago*, 652 Fed.Appx. 466, 468 (7th Cir. 2016).

For instance, Plaintiff claimed he broke his leg in the June 25, 2013 incident and he was then was denied medical care for over a year. However, Plaintiff failed to establish this injury, and he presented no evidence linking an x-ray taken a year and a half after the assault to the June 25, 2013 incident. Plaintiff attempted to present inadmissible hearsay statements of what Plaintiff claimed Dr. Tilden said to him, but Plaintiff did not present an affidavit or deposition from Dr. Tilden to support these statements. *See* March 26, 2019 Summary Judgment Order, p. 4-7.

---

[3] Plaintiff did not oppose the motion for summary judgment as to Defendants Garcia and Foley. (Plain. Resp., [163], p. 1, FN 1).

After the x-ray results were received, the medical record shows Dr. Tilden noted an old fracture of Plaintiff's right knee. (Def. Mot, Fol. Aff., p. 3, Bates #284).  However, the doctor's medical note indicating why the x-ray was ordered in the first place refers to Plaintiff's complaints of a broken bone in his right knee which occurred eight years prior, not due to a June 25, 2013 skirmish. (Def. Reply, [168], p. 9, Bates #166).

More important, the parties took the deposition of the radiologist who read the films of Plaintiff's x-ray and Dr. Foss admitted ""I don't know that it's an injury." (Def. Reply, {168}, Foss Aff., p. 30).

> You can have lots of these little round pieces of bone in your body
> along the edge of the bigger bones, and they can be just developmental
> from when your bones were maturing and they didn't fuse with the bone.
> We can just have little pieces of smooth bone chips…here and there.
> (Def. Reply, {168}, Foss Aff., p. 30).

Therefore, Dr. Foss was unable to say if the bone chip was the result of an injury, or the result of routine bone development.  Consequently, Plaintiff presented no evidence other than his own speculation that he broke his leg in the June 25, 2013 assault. *See Rockwell Automation, Inc. v. National Union Fire Insurance Co. of Pittsburgh, PA*, 544 F.3d 752, 757 (7th Cir. 2008)("mere speculation or conjecture will not defeat a summary judgment motion"); *Hall-Bey v Hanks*, 93 Fed.Appx. 977, 980 (7th Cir. 2004)("conclusory statements cannot sustain a non-movant's burden on summary judgment."); *Wells v Bureau County*, 723 F.Supp.2d 1061, 1087 (C.D.Ill. 2010)("[a]t summary judgment, a plaintiff cannot rest on conclusory allegations but rather must come forward with specific citations to evidence in the record supporting his claims.").

Plaintiff is reminded he will not be allowed to testify at trial that he suffered from a broken bone due to the June 25, 2013 assault.

Plaintiff also alleged he suffered from severe back pain, but Plaintiff was diagnosed with chronic lower back pain. Furthermore, Plaintiff was repeatedly seen for his complaints of back pain at both institutions and he was provided pain medication, an analgesic balm, heat and cold packs, and an x-ray.

Plaintiff did not dispute he saw medical staff for his back pain, but he alleged his constant complaints of leg pain were ignored. Plaintiff said he submitted multiple sick call requests regarding his leg pain, but he did not provide copies of any of those requests to the Court. Plaintiff also claimed he constantly complained to medical providers about his leg pain.

The CMT who saw Plaintiff immediately after the assault did record complaints of leg pain as well as a superficial abrasion to his right eyelid, a superficial laceration/ abrasion to the right leg, and complaints of a headache, and back, and stomach pain. (Def. Mot., [155], Nag. Depo., p. 24, 48-53; Wil. Aff., p. 2; Bates #320-21). However, this was the only documented report of leg pain. None of the other Stateville medical providers recorded complaints of leg pain when they saw Plaintiff on July 17, 2013; July 25, 2013; August 13, 2013; November 11, 2013; December 11, 2013; April 15, 2014; and April 24, 2014.[4]

---

[4] Plaintiff transferred to Pontiac Correctional Center on May 7, 2014.

For the purposes of summary judgment, the Court assumed each medical provider failed to record Plaintiff's complaints. Nonetheless, Plaintiff admitted he was consistently provided pain medication.

> If the patient has musculosketal pain in his knee or in his back or in his shoulder, all these areas are treated the same way…..You give a man ibuprofen, that is going to work in all the area(s) in pain, it's going to help in his knee and his shoulder and his back. (Def. Mot., [157], Obasi Dep., p. 39).

Plaintiff did not present medical evidence to dispute this claim, and therefore the Court found the pain medication provided addressed both his complaints of back and leg pain. While Plaintiff believes he should have received stronger pain medication, the record demonstrated medical providers at Stateville and Pontiac provided different medications to address his complaints. *See also Allen v Wexford Health Sources, Inc*, 2011 WL 5588770 at *3 (N.D.Ill. Nov. 1, 2011)(the plaintiff's "complaints regarding the strength of his pain medication constitute a mere disagreement concerning the appropriate dosage and such a complaint preferring one course of treatment over another is beyond the Eighth Amendment's purview.").

In addition, x-rays of Plaintiff's back and leg did not reveal any conditions requiring additional treatment. In fact, after the x-ray of Plaintiff's leg, he was provided 600 mg. of Motrin. (Def. Mot., [155], Fol. Aff., p. 3, Bates # 284). More important, there was no evidence the medical care provided was "such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Sain v Wood*, 512 F.3d 886, 895(7th Cir. 2008).

The Court also notes Plaintiff repeatedly claimed in his responses to the summary judgment motions that he reported blood in his urine, but nothing was done. Again, none of the medical records indicate Plaintiff reported this symptom and he did not present copies of any written requests for medical care for this issue. Again, for consideration of the dispositive motion, the Court assumed Plaintiff reported blood in his urine. Nonetheless, Plaintiff failed to demonstrate how this was relevant to his allegations of back and leg pain. Plaintiff provided only a vague allegation without any indication of how often this symptom occurred or how much blood was in his urine. More important, Plaintiff presented no medical evidence demonstrating it was a serious medical condition, or that it was somehow linked to his leg or back pain, or that it was the result of the June 25, 2013 assault.

As for Plaintiff's claims against the specific Stateville Medical Defendants, PA Williams and Dr. Obasi, Plaintiff failed to present evidence demonstrating either was deliberately indifferent to a serious medical condition.

Plaintiff saw PA Williams on only two occasions: November 11, 2013 and December 11, 2013. On the first occasion, Defendant PA Williams noted Plaintiff was referred from sick call due to complaints of back pain. She reviewed his medical records and examined Plaintiff. The PA noted Plaintiff had full range of motion with minimal discomfort and his neurological exam was normal. Defendant PA Williams assessed Plaintiff with chronic low back pain, and ordered pain medication, an analgesic balm, and an x-ray of his spine. The medical records also indicate she prescribed muscle relaxers, but it's not clear if Plaintiff is disputing this prescription.

8

During the follow-up visit, PA Williams noted the x-ray showed no abnormality in his spine. She further documented Plaintiff stated he was feeling better and he was playing basketball again, but Plaintiff disputes this entry. Plaintiff admits he continued on pain medication.

Defendant PA Williams maintained these were the only two times she saw Plaintiff, and it is the only contact alleged in Plaintiff's complaint and in his deposition. *See Taylor v. Magarvie*, Case No. 15-5190 (Northern Dist.(Comp., [1], p. 7); (Def. Mot., [155], Plain. Depo., p. 76-82).

In his response to the summary judgment motion, Plaintiff claimed he saw Defendant PA Williams "several times at Stateville." (Plain. Resp., [165], Plain. Aff., p. 2). Nonetheless, Plaintiff did not provide any supporting factual information such as when, how, or where he saw the Defendant. The Court notes PA Williams did not review requests for medical care, nor schedule appointments. Instead, she saw inmates who were referred by nurses or CMTs. Plaintiff did not provide any evidence to contradict Williams' role or clarify why or how she would have seen Plaintiff beyond the two times noted.

More important, Plaintiff cannot contradict his prior deposition testimony for purposes of creating a genuine issue of material fact on a motion for summary judgment. *See Janky v. Lake County Convention & Visitors Bureau,* 576 F.3d 356, 362 (7th Cir.2009); *Ineichen v. Ameritech,* 410 F.3d 956, 963 (7th Cir.2005); *Essick v. Yellow Freight Systems, Inc.,* 965 F.2d 334, 335 (7th Cir.1992).

Even if Plaintiff had presented some evidence to demonstrate he saw Defendant PA Williams on other occasions, Plaintiff admitted he received pain medication which, as noted, would address his complaints of back and leg pain. Furthermore, Plaintiff was not prevented from receiving medical care after the December 11, 2013 visit with PA Williams since he continued to see other members of the medical staff.

As for Dr. Obasi, the doctor claimed his only contact with Plaintiff involved reviewing the ordered x-ray of his spine. Since the x-ray was normal, he signed off on the report and the doctor had no further contact with Plaintiff or his medical care.

Plaintiff maintained he also saw Dr. Obasi in person on one occasion. There was no medical record to support this claim, and again Plaintiff provided no information concerning when this appointment took place. Nonetheless, for the purpose of summary judgment, the Court assumed Plaintiff did see the doctor in person.

Plaintiff said Dr. Obasi reviewed the x-ray, provided medication, and told Plaintiff he needed to give it time to see improvement. Plaintiff did not demonstrate Dr. Obasi was deliberately indifferent to his medical condition based on this one visit when Plaintiff was provided medication for his complaints of pain.

Therefore, Plaintiff failed to demonstrate Stateville Defendants Dr. Obasi and PA Willliams were deliberate indifference to a serious medical condition, failure to intervene to provide medical care, or intentionally inflicted emotional distress. If Plaintiff intended any other official capacity claim against Wexford, this claim also failed since he did not demonstrate an underlying constitutional violation by a Wexford

employee. *See Windle v. City of Marion, Ind.*, 321 F.3d 658, 663 (7th Cir. 2003); *Boston v. Dart*, 2016 WL 5373083, at *8 (N.D.Ill. Sept. 26, 2016).

The one surviving Stateville Defendant was CMT Nagpal. Plaintiff was seen by both a CMT and a doctor on the day of the assault. However, Plaintiff claimed he daily told CMT Nagpal he was still in pain, but nothing was done. Therefore, Plaintiff's allegation of deliberate indifference to a serious medical condition and intentional infliction of emotional distress survived as to Defendant Nagpal. The Court notes Plaintiff's claim is limited to the three weeks from when he saw a doctor on June 25, 2013 and he was provided pain medication, to the day he was seen on sick call on July 17, 2013 and provided a different pain medication.

The Court also dismissed claims against the two CMT's at Pontiac Correctional Center: Eschleman and Buczkowski. Plaintiff transferred to Pontiac Correctional Center on May 7, 2014, and remained there until he transferred to Menard Correctional Center on September 28, 2016. Plaintiff provided vague allegations that he complained to the two CMT's about a lack of medical care, particularly for knee pain.

However, there were more than 30 recorded contacts with Pontiac medical staff during this time. *See* May 7, 2014 (orientation interview); May 14, 2014 (psychiatry/meds); June 4, 2014 (asthma/meds); August 24, 201 (heartburn, indigestion/meds); September 11, 2014 (psychiatry/ labs ordered/refused); October 1, 2014 (asthma/meds); October 10, 2014 (influenza vaccine refused); November 11, 2014 (problem with eye); November 16, 2014 (right knee); November 18, 2014 (x-ray); November 18, 2014 (right knee/meds); December 18, 2014 (abdominal pain, nausea,

11

vomiting, fever; sent to hospital/meds); December 18, 2014 (x-ray); December 22, 2014 (follow-up/ gastritis/meds); January 28, 2015 (asthma/meds); February 27, 2015 (refill request); March 5, 2015 (refill, right knee); April 30, 2015 (asthma); July 1, 2015 (asthma/meds); August 17, 2015 (back pain); August 23, 2015 (headache/meds); September 6, 2015 (back pain); September 7, 2015 (knee pain/meds); September 24, 2015 (psychiatry/visit refused); November 8, 2105 (request doctor visit); November 11, 2015 (knee pain /meds); December 30, 2015(left leg pain); January 4, 2016 (leg pain/meds); January 25, 2016 (asthma); February 4, 2016 (leg pain); February 8, 2016 (leg pain/meds); February 19, 2016 (routine physical, left knee pain/ meds); February 23, 2016 (x-ray, left knee, unremarkable results); March 14-29, 2016 (crisis watch); June 7, 2016 (back pain/meds); July 9, 2016 (asthma) (Def. Mot, [155], Fol. Aff., Bates #154-420).

Plaintiff said he repeatedly complained to CMT Eschleman about leg and back pain, but she would shout down the cellhouse that he "did not need to stop her every time about this….and that I knew how to submit a slip to health care." (Plain. Resp., [165], Plain. Aff., p. 2-3). Plaintiff did not provide any information demonstrating he required emergency care, nor that the CMT prevented him for obtaining medical care. Plaintiff, in fact, was required to submit a request to see medical staff, and the record indicates he was seen repeatedly.

As for CMT Buczkowski, Plaintiff claimed on an unspecified day or time period, his leg gave out and he collapsed to the floor. Plaintiff made it back to his cell with the help of other inmates. CMT Buczkowski was called. Plaintiff claimed she told him to stand up, but he could not. Plaintiff then asked for medical care for his leg because he

12

said it was not working right and he was in pain. The CMT said she would put him in for sick call the next day, but he was not seen. (Plain. Resp., [165], Plain. Aff., p. 2).

Plaintiff's only support for this claim was his vague statement without any time frame. In the Court's review of the documents provided, there was one reference to Plaintiff complaining about his leg collapsing in the medical records. On December 30, 2015, a CMT noted Plaintiff reported left leg pain due to his right leg "giving out" on him causing him to twist his left leg. (Def. Mot., [155], Bates #371). It is unclear which CMT recorded this medical note. While the parties took the deposition of Defendant Buckowski, there is no citation to any testimony indicating she was the CMT involved. (Plain. Resp., [165], Buc. Depo.) Plaintiff was then seen on sick call on January 4, 2016. The medical notes indicate Plaintiff reported a sprain and he was provided with medication. (Def. Mot., [155], Bates #372). An x-ray of the left leg was ordered in February of 2015 with unremarkable results. (Def. Mot., [155], Bates #376, 420). However, Plaintiff never clarified whether this was the incident he was referencing.

While Plaintiff's statement concerning Defendant Buczowski's actions was concerning, Plaintiff must still come forward with some evidence in support of his claims at summary judgment. Plaintiff was clearly alleging Defendant Buczowski delayed medical care for a serious medical condition, but he still failed to even provide the year this incident occurred. Given the number of times Plaintiff was seen in the Health Care Unit and the number of times he was provided medical care and pain medication, Plaintiff's vague statement was not sufficient to demonstrate a violation of his constitutional rights.

It is clear Plaintiff believes he should have seen a doctor more frequently, and he believes he should have been provided some other, unspecified care. Nonetheless, Plaintiff did not provided any evidence from which the Court could infer he suffered from a specific condition which required other treatment, or the treatment provided was "blatantly inappropriate," or that any of the dismissed Defendants delayed medical care at any specified time. *Greeno v. Daley,* 414 F.3d 645, 654 (7th Cir. 2005) *quoting Snipes v. DeTella,* 95 F.3d 586, 592 (7th Cir.1996). In short, Plaintiff's disagreement with the medical care provided did not state a constitutional violation. *See Pyles v. Fahim*, 771 F.3d 403, 409–10 (7th Cir. 2014)("Disagreement between a prisoner and his doctor, or even between two medical professionals, about the proper course of treatment generally is insufficient, by itself, to establish an Eighth Amendment violation.").

III. CLAIMS AGAINST DEFENDANTS O'BRIEN AND PIERCE

The Defendants in their summary judgment motion argued Plaintiff had no evidence any of the named administrators had any personal involvement in his allegations. Plaintiff claimed IDOC had a policy of refusing to allow inmates to address more than one medical condition during each visit, and the Defendants "can be liable because of their involvement as policymakers." (Plain. Resp., [164], p. 19).

Nonetheless, Plaintiff sued these individuals in their individual capacities. There was no evidence they were in involved in enforcing the policy and no evidence of they had any personal involvement in Plaintiff's medical care. *See Wilson v. Warren Cty., Illinois*, 2016 WL 3878215, at *3 (7th Cir. 2016); *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995). Therefore, the Court dismissed the administrators with the exception of

14

Assistant Warden O'Brien since she was not specifically mentioned in the dispostive motion or response. The Court advised Plaintiff it would "grant summary judgment to O'Brien in thirty days from the date of this order for lack of personal involvement, unless Plaintiff presents evidence to establish otherwise." March 26, 2019 Summary Judgment Order, p. 31.

Plaintiff has provided a response, but notes he has no further evidence to present regarding Defendant O'Brien. (Plain. Resp., [182], p. 2). Therefore, the Court will grant summary judgment as to Defendant Assistant Warden O'Brien.

The Court also reserved ruling regarding Plaintiff's official capacity claim against Pontiac Correctional Center Warden Pierce. The Defendants simply argued the claim was moot because Plaintiff was no longer at the facility. However, given that Plaintiff could possibly return to Pontiac, this argument was rejected.

Nonetheless, the Court required the parties to provide further briefing concerning Plaintiff's claim of a one medical condition per visit policy, and asked the parties to respond to specific questions concerning the alleged policy. *See* March 26, 2019 Summary Judgment Order, p. 32-33.

Plaintiff has not addressed the Court's questions, but argues his "persistent, ongoing pain was exacerbated by the IDOC policy" which only allowed him to address complaints of back pain instead of both back pain and leg pain. (Plain. Resp., [182], p. 6). Plaintiff also argues the IDOC policy existed at both Pontiac and Stateville Correctional Centers.

Plaintiff has not presented evidence to support his argument. First, the only surviving medical claim alleges CMT Nagpal ignored Plaintiff's repeated requests for medical care for his leg pain from June 25, 2013 to July 17, 2013. To establish an official capacity claim, Plaintiff must show an employee committed a constitutional violation and the policy or custom was "the moving force" behind the violation. *Monell v Department of Social Services*, 436 U.S. 658, 695 (1978). Plaintiff's surviving claim is based on a denial of all medical care, not a failure to address more than one symptom. Therefore, he has failed to demonstrate an underlying violation based on a one medical issue per visit policy. *See Durkin v. City of Chi.*, 341 F.3d 606, 615 (7th Cir. 2003); *Windle v. City of Marion, Ind.*, 321 F.3d 658, 663 (7th Cir. 2003); *Boston v. Dart*, 2016 WL 5373083, at *8 (N.D.Ill. Sept. 26, 2016).

Second, the record shows Plaintiff was seen for one than one symptom at a time. For instance, nursing staff referred Plaintiff to a doctor for his complaints of "irritations and drainage in his left eye" on one occasion, but the doctor addressed Plaintiff's complaints regarding "a broken bone just below the right knee for eight years." (Def. Mot., [155], Fol. Aff., p. 3).

Third, even if the Plaintiff had presented evidence of the one issue policy, the record demonstrates Plaintiff was still not prevented from seeing medical staff on different occasions for a variety of complaints at both Pontiac and Stateville. Plaintiff saw medical staff for asthma, mental health conditions, abdominal pain, an eye problem, heartburn, headache, and complaints of left leg, right leg, and back pain. Plaintiff was provided with a variety of medications; hot and cold packs; an analgesic

balm; x-rays of his back, left knee, and right knee; and he was taken to the hospital on one occasion.

Finally, the alleged policy did not prevent Plaintiff from receiving care for his leg pain, since Plaintiff admits he was consistently given pain medication. Although Plaintiff claims the medication was for his complaints of back pain, he had not presented evidence to dispute the medical testimony demonstrating the medication would have addressed all his complaints of pain. Defendant Pierce's motion for summary judgment is also granted.

## IV. CLARIFICATION OF REMAINING CLAIMS

Plaintiff has the following surviving claims:

1) Defendant CMT Nagpal denied medical care for Plaintiff's complaints of knee pain from June 25, 2013 to July 17, 2013.

2) Stateville Correctional Center Officers McGarvey, Durrett, Malkowski, and Griffin failed to protect Plaintiff from an inmate assault on June 25, 2013

3) Stateville Correctional Center Officers McGarvey, Durrett, Malkowski, and Griffin failed to intervene to stop an unspecified assault by an officer or officers.

4) Officers McGarvey, Durrett, Malkowski, and Griffin intentionally inflicted emotional distress.

5) An indemnification claim.

While not addressed in the previous dispositive motions, it appears Plaintiff's third count alleges officers intentionally assaulted him when attempting to stop the inmate assault on June 25, 2013 and the Defendants failed to intervene to stop that assault. *See* (Plain. Resp., [164], p. 1)(Plaintiff "was hurt further when correctional

17

officers came in to end the assault."). The Court may require greater clarification of this claim before a trial.

However, the parties expressed an interest is mediation during the last status conference. The parties asked that the case be set for mediation once the additional briefing had been considered. Therefore, the Court will refer this matter to Magistrate Judge Jonathan Hawley for settlement negotiations. The Court will also set this matter for a status conference to set pretrial and trial dates.

**IT IS THEREFORE ORDERED:**

1) The IDOC Defendants' motion for summary judgment is also granted as to Defendants Pontiac Correctional Center Warden Guy Pierce and Stateville Correctional Center Assistant Warden Doretta O'Brien. *See* Fed.R.Civ.P. 56. The Clerk of the Court is directed to dismiss Defendants O'Brien and Pierce. The Plaintiff's surviving claims are as outlined in this order.

2) This matter is referred to Magistrate Judge Jonathan Hawley for settlement conference.

Entered this 16th day of July, 2019.

s/James E. Shadid
_____
JAMES E. SHADID
UNITED STATES DISTRICT JUDGE